Reynaldo RODRIGUEZ ESTERAS,
et al., Plaintiff,

v.

Harry SOLIVAN DIAZ,
et al. Defendants.

No. CIV. 01–1348(JAF).

United States District Court,
D. Puerto Rico.

May 29, 2003.

Manuel R. Suarez–Jimenez, San Juan, for Reynaldo Rodriguez–Esteras, Iris N. Esteras, Reynaldo Rodriguez–Morales, Conjugal Partnership Rodriguez–Esteras, Reine Rodriguez–Esteras, minor, Marinelly Rodriguez–Esteras, Janet Rodriguez–Esteras, All Plaintiffs, plaintiffs.

Eileen Landron–Guardiola, San Juan, Francisco A. Ojeda–Diez, United States Attorney's Office, Torre Chardon, Hato Rey, for Harry Solivan–Diaz, Blanca Perez, John Doe 01CV1348, Pedro A. Toledo–Davila, defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, Reynaldo Rodríguez Esterás; his parents, Iris Esterás, Reynaldo Rodríguez Morales, and their conjugal partnership; and his siblings, Reiné Rodríguez Esterás, Marinelly Rodríguez Esterás, Reynaldo Rodríguez Moran, and Janet Rodríguez Esterás, bring the present action against Defendants, Puerto Rico Police Officer Harry Solivan Díaz ("Solivan"); Sargent Blanca Pérez ("Pérez"); Police Superintendent Pedro Toledo Dávila ("Toledo"); and other unnamed officers, pursuant to the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, U.S. CONST. amends. IV, V, VIII, & XIV, 42 U.S.C. § 1983 (1994 & Supp.2001), and Puerto Rico law. *Docket Document No. 1.*

Defendants Solivan, Pérez, and Toledo move to dismiss the complaint. *Docket Document Nos. 8, 14.* Plaintiffs oppose the motions. *Docket Document No. 17.*

## I.

*Factual and Procedural Synopsis*

We derive the following factual allegations from Plaintiffs' complaint, *Docket Document No. 1.*

Defendants are officers of the Puerto Rico Police Department, and are sued in their personal capacities.

Plaintiff Reynaldo Rodríguez Esterás [1] was arrested by Defendants Solivan and Pérez on March 23, 2000, in Guaynabo, Puerto Rico. At the time of his arrest, Plaintiff was traveling with José Miguel Gutiérrez Rivera ("Gutiérrez"). Plaintiff was a passenger in Gutiérrez's car.

Defendants Solivan and Pérez purportedly received a tip that Gutiérrez and Plaintiff were about to commit a burglary using stolen weapons and that they were going to meet a third person at a gas station in Guaynabo before executing the burglary. At the gas station, Defendant Solivan placed Gutiérrez and Plaintiff under surveillance using "night vision" binoculars and observed another car arrive. Defendant Solivan noticed Gutiérrez take out what he apparently believed was an illegal handgun silencer. He and Defendant Pérez, with the assistance of other officers in the area, arrested the occupants of both cars: Gutiérrez, Plaintiff, and a third person, Hipólito Medina Rivera ("Medina Rivera").

After placing the three individuals under arrest, the officers found two firearms, what appeared to be a silencer, and other goods, all of which were allegedly stolen in a burglary from the residence of Ricardo Flores Cotto.

Following the arrest, Defendants Solivan and Pérez interrogated Gutiérrez. At this interrogation, Gutiérrez purportedly admitted to stealing the weapons and swore that Plaintiff was innocent. Defendants Solivan and Pérez then brought Gutiérrez, Medina Rivera, and Plaintiff to Cayey. In Cayey, Gutiérrez allegedly signed a confession.

After releasing Medina Rivera, Defendants Solivan and Pérez took Gutiérrez and Plaintiff to a magistrate judge in Guayama. On March 24, 2000, after listening to the testimony of Defendant Solivan, the magistrate judge found that probable cause existed to arrest both suspects. Plaintiff avers that during the hearing, Defendants Solivan and Pérez did not reveal that Gutiérrez had confessed nor did they divulge that there was no silencer or automatic weapon among the weapons found in the car. Plaintiff maintains that this evidence would have vindicated him.

Between March 24, 2000 and May 5, 2000, Plaintiff was incarcerated pending trial as he was unable to post a $140,000 bond. During this time, he petitioned at least on three occasions for a reduction in bond. All three requests were denied. Plaintiff alleges that at three preliminary hearings, Defendants Solivan and Pérez lied about the facts of the case and withheld exculpatory evidence.

On May 5, 2000, bond was reduced to $1,500, which Plaintiff posted. On June 16, 2000, during a preliminary hearing, Defendant Solivan purportedly told the judge that Plaintiff and Gutiérrez were carrying an illegal silencer and an auto-

---

1. Unless otherwise specified, all references to "Plaintiff" allude to Plaintiff Reynaldo Rodríguez Esterás.

matic weapon when, in fact, the device was not a silencer and the weapon did not have an automatic discharge system. Defendant Solivan purportedly knew at the hearing, and at the time of the arrest, that the device was not a silencer and that the weapon was semi-automatic.

Sometime before the trial scheduled for September 15, 2000, the prosecutor purportedly confronted Defendants Solivan and Pérez with the accusation that they were concealing exculpatory evidence. Plaintiff avers that Defendants Solivan and Pérez admitted that they had failed to divulge exculpatory evidence. Following the purported confession by Defendant officers, the prosecutor requested the dismissal of all charges against Plaintiff.

Plaintiffs filed the present action on March 26, 2001. *Docket Document No. 1.* Plaintiff asserts, *inter alia,* false arrest and malicious prosecution in violation of his constitutional rights and 42 U.S.C. § 1983. *Id.* He alleges that Defendant Toledo is liable under a theory of supervisory liability. *Id.* Plaintiffs Iris Esterás, Reynaldo Rodríguez Morales, Reiné Rodríguez Esterás, Marinelly Rodríguez Esterás, Reynaldo Rodríguez Morán, and Janet Rodríguez Esterás, assert claims for emotional suffering pursuant to Article 1802 of Puerto Rico's Civil Code, 31 L.P.R.A. §§ 5141–42 (1990 & Supp.1998). *Id.* Plaintiffs seek compensatory and punitive damages. *Id.*

On August 6, 2001, Defendants Solivan and Pérez moved to dismiss the present complaint on the grounds that: (1) the complaint is time-barred; (2) Plaintiffs have failed to state a claim under 42 U.S.C. § 1983. *Docket Document No. 8.* On September 27, 2001, Defendant Toledo moved to dismiss on the same grounds. *Docket Document No. 14.* Plaintiffs opposed Defendants Solivan and Pérez's motion to dismiss on October 9, 2001. *Docket*

*Document No 17.* Defendants Solivan and Pérez submitted a reply on November 13, 2001. *Docket Document No. 23.*

## II.

### *Motion to Dismiss Standard under Rule 12(b)(6)*

Under Rule 12(b)(6), a defendant may move to dismiss an action against him based solely on the pleadings for the plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [nonmovant]." *Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993); *see also Coyne v. City of Somerville,* 972 F.2d 440, 442–43 (1st Cir.1992). We then determine whether the plaintiff has stated a claim under which relief can be granted.

## III.

### *Analysis*

A. *Section 1983 Standing*

█ Defendants move to dismiss the section 1983 claims brought by the derivative Plaintiffs, Iris Esterás, Reynaldo Rodríguez Morales, Reiné Rodríguez Esterás, Marinelly Rodríguez Esterás, Reynaldo Rodríguez Morán, and Janet Rodríguez Esterás.

Our review of the complaint indicates that these Plaintiffs have not raised federal civil rights claims. Since Plaintiffs Iris Esterás, Reynaldo Rodríguez Morales, Reiné Rodríguez Esterás, Marinelly Rodríguez Esterás, Reynaldo Rodríguez Morán, and Janet Rodríguez Esterás have not asserted section 1983 claims, we necessarily deny Defendants' motion to dismiss these claims as moot.

## B. *Statute of Limitations*

Defendants move to dismiss Plaintiff's section 1983 action on the ground that it is untimely. *Docket Document Nos. 8, 14.*

■ To determine the applicable statute of limitations for this action, we first turn to section 1983 to determine its provisions. Section 1983, however, lacks an accompanying federal statute of limitations.[2] *See* 42 U.S.C. § 1983. Consequently, we adopt relevant provisions from the analogous statute of limitations of the forum state. *See Wilson v. Garcia,* 471 U.S. 261, 266–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (directing federal courts in section 1983 actions to borrow and apply a state's statute of limitations for personal injury cases).

■ For section 1983, the most appropriate provision is the statute of limitations for personal injury cases. *See Owens v. Okure,* 488 U.S. 235, 236, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). In Puerto Rico, a one-year statute of limitations governs personal injury actions. *See* 31 L.P.R.A. § 5298(2) (1991).[3] Therefore, we apply the one-year prescriptive period to Plaintiffs' section 1983 action. *See Rivera–Ramos v. Román,* 156 F.3d 276, 282 (1st Cir.1998).

■ "Although the limitations period is determined by state law, the date of accrual is a federal law question." *Carreras–Rosa v. Alves–Cruz,* 127 F.3d 172, 174 (1st Cir.1997) (per curiam); *see also Riv-*

*era–Ramos,* 156 F.3d at 282 ("For section 1983 actions, federal law governs the date on which a cause of action accrues (i.e., when the statute begins to run) while the length of the period and tolling doctrine are taken from local law.") (citation omitted). The one-year statute of limitations "begins running one day after the date of accrual, which is the date plaintiff knew or had reason to know of the injury." *Benitez–Pons v. Commonwealth of P.R.,* 136 F.3d 54, 59 (1st Cir.1998) (citation omitted).

■ "The first step in fixing accrual is to identify the actual injury of which the plaintiff complains." *Guzman–Rivera v. Rivera–Cruz,* 29 F.3d 3, 5 (1st Cir.1994). "For purposes of determining when a claimant knew or had reason to know of the alleged injury, we look to the common law cause of action most closely analogous to the constitutional right at stake." *Calero–Colon v. Betancourt–Lebron,* 68 F.3d 1, 3 (1st Cir.1995).

■ Plaintiffs' complaint does not clearly articulate each alleged constitutional violation at issue. It appears that Plaintiff alleges that Defendants deprived him of his civil rights by using excessive force, arresting him without probable cause, initiating baseless charges against him, and failing to divulge exculpatory evidence during court proceedings. We construe these allegations as Fourth and Fourteenth

---

**2.** Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

**3.** Section 5298 stipulates:

The following prescribe in one (1) year:
(1) Actions to recover or retain possession.
(2) Actions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in section 5141 of this title, from the time the aggrieved person had knowledge thereof.

31 L.P.R.A. § 5298.

Amendment claims of excessive force, unlawful arrest and detention, and malicious prosecution.

We consider the timeliness of the present complaint as to each of these alleged constitutional violations.

### 1. *Unlawful Arrest and Detention/Excessive Force*

■ We consider first Plaintiff's claims that he was arrested and detained without probable cause on March 23, 2000. *Docket Document No. 1.*

■ The accrual period for a section 1983 action "starts when the plaintiff knows, or has reason to know, of the injury on which the action is based." *Carreras–Rosa,* 127 F.3d at 174. The First Circuit has explained that "all claims based on the officers' physical abuse or arrest of the [plaintiff] accrued at the time those events occurred . . . because the [plaintiff] had ample reason to know of the injury then and there." [4] *See Nieves v. McSweeney,* 241 F.3d 46, 52 (1st Cir.2001)

■ Accordingly, we find that Plaintiff knew of any deprivations associated with his arrest on the date that the seizure occurred, March 23, 2000. Therefore, Plaintiff's claims of unlawful arrest and detention accrued on March 23, 2000, the statute of limitations began running on March 24, 2000, and expired on March 23, 2001.[5] Since Plaintiffs filed the present action on March 26, 2001, *Docket Document No. 1,* section 1983 claims alleging unlawful arrest and detention are time-barred.

To the extent that Plaintiff also brings a claim of excessive force stemming from his arrest, we find that such a claim accrued at the time he was arrested. *Nieves,* 241 F.3d at 52. As we explained, *supra,* Plaintiff's arrest occurred outside of the relevant time period. Therefore, any claim that Defendants used excessive force during the arrest is time-barred.

### 2. *Malicious Prosecution*

■ Plaintiff claims that on March 24, 2000, Defendants Solivan and Pérez took him before a magistrate judge, where they lied about the character of the items that they found when they arrested Plaintiff and failed to reveal the information that they had received during their interrogation of Gutiérrez. Plaintiff contends that Defendant officers continued to lie about the weapons and that they covered up exculpatory evidence at three separate preliminary hearings.

■ Section 1983 actions based on malicious prosecution do not accrue until the termination of the criminal proceedings.

---

4. Judge Lynch, concurring in *Calero–Colon v. Betancourt–Lebron,* 68 F.3d 1, 5 (1st Cir. 1995), explained that there may be a situation where "plaintiff neither knew, nor had reason to know, at the time of their warrantless arrests that the had suffered a constitutional injury and so the statute would not begin to run upon arrest." Plaintiff, here, does not make such an allegation and we, therefore, find that the statute of limitations runs from the date of his arrest.

5. Plaintiffs argue that, since the year 2000 was a leap year, the statute of limitations analysis is based on a 366–day count, instead of the normal 365. *Docket Document No. 17.*

Accordingly, Plaintiffs believe that they had until Monday, March 26, 2001 to file their complaint. *Id.*

Generally, the legal year consists of 365 days. *Yeinsip v. Lufthansa German Airlines,* 725 F.Supp. 113, 114 (D.P.R.1989). However, "the legal year shall consist of 366 days if the month of February of a leap year is comprised within the period." *Id.* at 115. As discussed, *supra,* Plaintiff's alleged injuries accrued on March 23, 2000, past the month of February 2000. Therefore, although the year 2000 was a leap year, Plaintiffs are not entitled to an extra day to file the complaint.

*Heck v. Humphrey,* 512 U.S. 477, 489, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Here, the prosecutor requested the dismissal of the charges against Plaintiff sometime between June and September 2000. This time-period falls well within the one-year statute of limitations. Therefore, regardless of the actual date that the criminal proceedings terminated, we find that Plaintiff's section 1983 malicious prosecution claim is timely.

## C. *Failure to State a Claim of Malicious Prosecution*

Defendants Solivan and Pérez argue that Plaintiff has merely alleged a common law tort claim for malicious prosecution, which is not actionable under section 1983. *Docket Document No. 8.* Plaintiff counters that his claim of malicious prosecution is cognizable under section 1983. *Docket Document No. 17.*

■ Under Puerto Rico law, a plaintiff establishes a claim of malicious prosecution by showing that: (1) the criminal action was initiated and instigated by defendants; (2) the criminal action terminated in favor of plaintiff; (3) the defendants acted with malice and without probable cause; and (4) plaintiff suffered damages. *Torres v. Superintendent of Police of Puerto Rico,* 893 F.2d 404, 409 n. 7 (1st Cir.1990) (citing *Ayala v. San Juan Racing Corp.,* 112 D.P.R. 804 (1982)); *see also Abreu–Guzman v. Ford,* 241 F.3d 69, 70 (1st Cir.2001).

Plaintiff has sufficiently pled these elements. *See Docket Document No. 1.* The complaint charges that: (1) Defendants Solivan and Pérez placed Plaintiff under arrest and instigated prosecution against him; (2) the prosecutor eventually requested the dismissal of the case; (3) Defendants Solivan and Pérez lied during preliminary hearings, acting with malice and without probable cause; (4) Plaintiff

suffered the loss of liberty for almost forty days. *Id.* Therefore, Plaintiff's claim is properly characterized as a claim for malicious prosecution.

■ However, a state law claim for malicious prosecution, on its own, is insufficient to constitute a claim under section 1983. *See Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 256 (1st Cir. 1996). In order to transform the claim of malicious prosecution claim into a cognizable action under section 1983, a plaintiff must establish that the defendants acted under color of state law, and deprived the plaintiff of a constitutional right. *Id.* at 254.

Since there is no dispute that Defendants acted under color of state law, our determination of whether Plaintiff has stated a claim under section 1983 turns on whether he has alleged a deprivation of a constitutional right. As such, we evaluate whether Defendants' purported failure to divulge exculpatory evidence implicated Plaintiff's constitutional rights. We consider his claim in the context of the Fourth and Fourteenth Amendments.

### 1. *Procedural Due Process*

■ To constitute a violation of procedural due process, a malicious prosecution must either result in a deprivation of life, liberty, or property, or violate another constitutional right. *Ayala–Martinez v. Anglero,* 982 F.2d 26, 27 (1st Cir. 1992). However, a section 1983 claim based on malicious prosecution cannot be maintained under the rubric of procedural due process where local tort law affords an anodyne for malicious prosecution. *See Roche,* 81 F.3d at 256. Puerto Rico offers procedural relief for malicious prosecution. *Perez–Ruiz v. Crespo–Guillen,* 25 F.3d 40, 43 (1st Cir.1994) (holding that the availability of an adequate remedy for malicious

prosecution under commonwealth law was fatal to appellants' procedural due process claim). Therefore, we find that Plaintiff cannot sustain a claim for malicious prosecution based on an alleged procedural due process violation.

### 2. *Substantive Due Process*

■ Both the Supreme Court and the First Circuit have held that there is no substantive due process right to be free from malicious prosecution. *See Albright v. Oliver,* 510 U.S. 266, 275, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality); *Meehan v. Town of Plymouth,* 167 F.3d 85, 88 (1st Cir.1999); *Roche,* 81 F.3d at 256. As such, Plaintiff cannot maintain his section 1983 claim based on an alleged deprivation of his constitutional rights to substantive due process.

### 3. *Seizure*

In the First Circuit, "[i]t is an open question whether the Constitution permits the assertion of a section 1983 claim for malicious prosecution on the basis of an alleged Fourth Amendment violation." [6] *Nieves,* 241 F.3d at 54; *see also Meehan,* 167 F.3d at 88. Nonetheless, the First Circuit has assumed that such a claim, under the right circumstances, would be valid. *Nieves,* 241 F.3d at 54 (assuming, without deciding, that malicious prosecution can "under some circumstances, embody a violation of the Fourth Amendment."); *see also Albright,* 510 U.S. at 271, 114 S.Ct. 807. Furthermore, the Circuits that have directly addressed the issue have consistently found that "state actors who pursue malicious prosecution against others may be held to have violated the

Fourth Amendment, thereby risking the imposition of liability under 42 U.S.C. § 1983." *Britton v. Maloney,* 196 F.3d 24, 28 (1st Cir.1999) (collecting cases).

■ "The essence of malicious prosecution is the perversion of proper legal procedures." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 117 (2d Cir.1995). Accordingly, "[t]he tort of malicious prosecution permits damages for a deprivation of liberty—a seizure—*pursuant to legal process.*" *Nieves,* 241 F.3d at 54. Legal process can be initiated pursuant to an arrest warrant or a subsequent charging document. *Id.* Since Plaintiff was not arrested pursuant to a warrant, we consider only whether he incurred some post-arraignment deprivation of liberty. *Id.*

■ Plaintiff was detained after the initiation of criminal proceedings because he was unable to post a $140,000 bond. According to the complaint, this detention was predicated on Defendants Pérez and Solivan's failure to divulge exculpatory evidence. Plaintiff's post-arraignment detention placed definitive restrictions on his liberty, and we find that it constituted a seizure under the Fourth Amendment. *Cf. id.* ("[A] seizure under Fourth Amendment jurisprudence is generally a discrete event, quintessentially an arrest or at least a physical detention"); *Britton,* 196 F.3d at 30 ("In order for a seizure to occur, the subject must 'yield' to the assertion of authority over him and thereby have his liberty restrained."). Plaintiff's contention that he was detained pursuant to improper criminal proceedings is sufficient to state a violation of malicious prosecution under the Fourth Amendment.

---

**6.** The Fourth Amendment provides:
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. CONST. amend. IV.

## D. *Qualified Immunity*

Defendants move to dismiss the complaint on the grounds that they are immune from suit for money damages in their personal capacities pursuant to the doctrine of qualified immunity. *Docket Document No. 8, 14.*

 Qualified immunity is an affirmative defense shielding public officials sued in their individual capacity from civil damages so long as their conduct does not violate any clearly-established statutory or constitutional right of which a reasonable person would be aware. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 704 (1st Cir.1993) (stating that the doctrine of qualified immunity "shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known."). As such, we must determine as a matter of law whether the constitutional right in question was clearly established at the time of the alleged violation. *See Martinez–Rodriguez v. Colon–Pizarro,* 54 F.3d 980, 988 (1st Cir.1995). "Determining whether qualified immunity is available to a particular defendant at a particular time requires a trifurcated inquiry." *Hatch v. Dep't for Children, Youth and Their Families,* 274 F.3d 12, 20 (1st Cir.2001). The inquiry turns on whether plaintiff has alleged the violation of a constitutional right, whether that constitutional right was clearly established at the time of the alleged violation, and whether an objectively reasonable official would have believed that her actions violated this right. *Id.*

As we explicated, *supra,* Plaintiff's allegations, if true, are sufficient to state a violation of the Fourth Amendment.

Therefore, our qualified immunity inquiry turns on whether Plaintiff's Fourth Amendment right to be free from malicious prosecution was clearly established in March 2000, when the alleged violation occurred.

 The phrase clearly established "denotes that at the time the challenged conduct occurred the contours of the right were sufficiently plain that a reasonably prudent state actor would have realized not merely that his conduct might be wrong, but that it violated a particular constitutional right." *Id.* (internal citations omitted); *see Anderson v. Creighton,* 483 U.S. 635, 638–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "To determine the contours of a particular right at a particular time, an inquiring court must look not only to Supreme Court precedent but to all available case law." *Hatch,* 274 F.3d at 23. "Among other factors, the location and level of the precedent, its date, its persuasive force, and its level of factual similarity to the facts before this Court may all be pertinent to whether a particular precedent 'clearly establishes' law for purposes of a qualified immunity analysis." *El Dia v. Rossello,* 165 F.3d 106, 110 n. 3 (1st Cir.1999).

 At the time of Plaintiff's alleged constitutional injury, the Supreme Court had " 'express[ed] no view' as to whether the burden of baseless criminal charges might effect an unlawful 'seizure' and thereby trigger a Fourth Amendment claim." *Britton,* 196 F.3d at 28 (citing *Albright v. Oliver,* 510 U.S. 266, 274–75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion)). The First Circuit had assumed, but not decided, that a plaintiff could assert a violation of the Fourth Amendment based on malicious prosecution. *See Britton,* 196 F.3d at 28; *Meehan,* 167 F.3d at 88. As the court in

*Britton* pointed out, by the end of 1999, every Circuit that had considered the question since the Supreme Court's decision in *Albright* agreed that malicious prosecution by state actors may violate the Fourth Amendment. 196 F.3d at 28; *see also Evans v. Ball*, 168 F.3d 856, 860–61 (5th Cir.1999); *Spurlock v. Satterfield*, 167 F.3d 995, 1005–06 (6th Cir.1999); *Gallo v. City of Philadelphia*, 161 F.3d 217, 221–22 (3d Cir.1998); *Uboh v. Reno*, 141 F.3d 1000, 1003 (11th Cir.1998); *Brooks v. City of Winston–Salem*, 85 F.3d 178, 183–84 (4th Cir.1996); *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir.1996); *Singer*, 63 F.3d at 114–16; *Smart v. Board of Trustees of the Univ. of Illinois*, 34 F.3d 432, 434 (7th Cir.1994).

Moreover, at the time of the alleged incident, there was significant persuasive authority indicating that a plaintiff could state a claim of malicious prosecution under the Fourth Amendment under similar, if not less restrictive conditions, than those presented here. *See, e.g., Spurlock*, 167 F.3d at 1006 (finding that a reasonable police officer would know that fabricating probable cause, thereby effectuating a seizure, violates the Fourth Amendment); *see also Gallo*, 161 F.3d at 225 (concluding that restrictions, such as limitations on his right to travel, constituted a seizure under the Fourth Amendment, and therefore, could form the basis for a malicious prosecution claim).

In light of the near unanimity among the Circuits and the factual support found in the persuasive authority, we believe that a reasonably prudent state actor would have realized that failing to divulge exculpatory evidence at the arraignment and other preliminary hearings, thereby causing the detention of a criminal defendant, would violate the Fourth Amendment. Since the parameters of the right to be free from malicious prosecution were sufficiently clear at the time of the alleged incident, Defendants are not entitled to qualified immunity.

### E. *Supervisory Liability*

Defendant Toledo moves to dismiss the complaint against him on the ground that Plaintiff has not stated a claim of supervisory liability. *Docket Document No. 14.*

■■■ A supervisory official[7] may be liable under Section 1983 for the behavior of his subordinates if: (1) the behavior of the subordinates results in a constitutional violation; and (2) the official's action was affirmatively linked to that behavior such that it could be characterized as "supervisory encouragement, condonation, or acquiescence" or "gross negligence amounting to deliberate indifference." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 902 (1st Cir.1988).

■■■ An important factor in evaluating liability is whether the official had notice of the alleged violations. *See Lipsett*, 864 F.2d at 902 (internal citations omitted). Once an official has constructive or actual knowledge of the alleged deprivations, his failure to stop the conduct may constitute a constitutional violation. *Id.; see also Manarite v. City of Springfield*, 957 F.2d 953, 956 (1st Cir.1992) (requiring a supervisor's actual knowledge or at least willful blindness to find liability). "Under

---

7. A supervisor is "defined loosely to encompass a wide range of officials who are themselves removed from the perpetration of the rights-violating behavior" but may nonetheless be liable under section 1983 for formulating a policy or engaging in conduct that leads to a civil rights violation committed by another. *Camilo–Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir.1998).

this rubric, a supervisor may be held liable for what he does (or fails to do) if his behavior demonstrates deliberate indifference to conduct that is itself violative of constitutional rights." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994).

A plaintiff must also "affirmatively connect the supervisor's conduct to the subordinate's violative act or omission." *Id.* "This affirmative connection need not take the form of knowing sanction, but may include tacit approval of, acquiescence in, or purposeful disregard of, rights-violating conduct." *Camilo–Robles v. Hoyos,* 151 F.3d 1, 6 (1st Cir.1998) (citing *Maldonado–Denis,* 23 F.3d at 582).

We consider whether Plaintiff has sufficiently alleged that Defendant Toledo is legally accountable for malicious prosecution on the basis of supervisory liability.

Plaintiff avers that Defendant Toledo failed to train and supervise Defendants Solivan and Pérez as to their obligations with respect to exculpatory evidence. *Docket Document No. 1.* Plaintiff maintains that Toledo's behavior constituted supervisory encouragement and condonation of Defendants Solivan and Pérez's actions. *Id.* Plaintiff asseverates that it is self-evident that Defendant Toledo's failure to train and supervise Solivan and Pérez would lead to an infringement of an individual's constitutional rights. *Id.* Therefore, Plaintiff contends there is an affirmative link between Defendant Toledo's actions and the constitutional deprivation at issue in the present case. *Id.*

Plaintiff's complaint essentially outlines the standard used to determine whether an official is responsible under a theory of supervisory liability. However, a civil rights complaint must do more than adumbrate the legal standard. *Dewey v. University of New Hampshire,* 694 F.2d 1,

3 (1st Cir.1982) ("It is not enough to allege a general scenario which could be dominated by unpleaded facts."). "[W]e insist that the claim at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why." *Id.; see also Gilbert v. City of Cambridge,* 932 F.2d 51, 62 (1st Cir.1991) ("A reviewing court 'need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,' even when such phantoms are robed by the pleader in the guise of facts.") (internal citation omitted).

In *Jones v. Rhode Island,* 724 F.Supp. 25, 31–33 (D.R.I.1989), the district court dismissed a supervisory liability claim where the plaintiff merely used boilerplate language and failed to identify the factual scenario with objectivity and particularity. As in *Jones,* Plaintiff here identifies the legal standard used in supervisory liability cases and uses some of the appropriate buzz words, but does not make any factual averments as to the material elements of his supervisory liability claim. Plaintiff has not factually alleged that Defendant Toledo had notice of the purported violation or factually identified the causal connection tying Defendant Toledo to the officers' actions. *Rogan v. Menino,* 175 F.3d 75, 78 (1st Cir.1999) (dismissing supervisory liability claim where plaintiff did not plead any facts sufficient to support an inference as to the supervisors' notice of the alleged violations); *Rodriguez–Vazquez v. Cintron–Rodriguez,* 160 F.Supp.2d 204, 212 (D.P.R.2001) (finding broad allegations of inadequate training and supervision, which were not linked to the particular defendants in the case, inadequate to support claim of supervisory liability). Although we draw all reasonable inferences in favor of Plaintiff, we, nonetheless, find that the complaint's boilerplate language, without more, is not enough to state a claim of supervisory liability. *The Dartmouth Review v. Dart-*

*mouth College*, 889 F.2d 13, 17 (1st Cir. 1989) ("Rule 12(b)(6) is not entirely a toothless tiger."). Therefore, we dismiss the complaint as to Defendant Toledo.

## IV.

### *Conclusion*

In accordance with the forgoing, we **GRANT** in part and **DENY** in part Defendants' Rule 12(b)(6) motion to dismiss Plaintiff Rodríguez Esterás' section 1983 claim, *Docket Document Nos. 8, 14.* Specifically, we find that Plaintiff Rodríguez Esterás has sufficiently pled a timely claim of malicious prosecution under the Fourth Amendment to survive the present motion to dismiss, and that Defendants Solivan and Pérez are not entitled to qualified immunity for this claim. Plaintiff's remaining constitutional claims against Defendants Solivan and Pérez are **DISMISSED.** *Docket Document No. 8.*

Plaintiff has not made even the minimal factual averments necessary to state a claim of supervisory liability. Accordingly, this court **GRANTS** Defendant Toledo's claim to dismiss the complaint against him. *Docket Document No. 14.*

**IT IS SO ORDERED.**