This Decision is a
Precedent of the TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**

Pologeorgis

Mailed:  March 15, 2010

Opposition No. 91183362
Opposition No. 91186156

American Express Marketing &
Development Corp.

v.

Gilad Development Corporation

**Before Bucher, Mermelstein, and Bergsman,**
**Administrative Trademark Judges.**

**By the Board:**

These consolidated proceedings now come before the Board for consideration of (1) applicant's motion for leave to amend its answers to assert "noncommercial use" as an affirmative defense to opposer's claims under the Trademark Dilution Revision Act of 2006 ("the TDRA"), (2) applicant's motion for summary judgment based on the affirmative defense of "noncommercial use," and (3) opposer's cross-motion for summary judgment on its claims of likelihood of confusion and dilution.

Applicant filed two applications for registration; one for the mark GRAND AMERICAN EXPRESS[1] in standard character format and the other for the mark GRAND AMERICAN EXPRESS RAILROAD CLEVELAND AND COLUMBUS and design,[2] as illustrated below. The services identified in both applications are "transportation services, namely, transporting passengers by means of a 19th century replica train" in International Class 39.



On April 3, 2008, and September 3, 2008, respectively, opposer filed notices of opposition to registration of applicant's marks. These opposition proceedings were consolidated by Board order dated October 29, 2008. As grounds for each of the oppositions, opposer alleges ownership of a family of famous AMERICAN EXPRESS marks, and alleges: (1) priority of use and likelihood of confusion and (2) dilution.

---

[1] Application Serial No. 77200844, filed on June 7, 2007, based on an allegation of a *bona fide* intent to use the mark in commerce under Trademark Act Section 1(b), 15 U.S.C. Section 1051(b).
[2] Application Serial No. 77439287, filed on April 3, 2008, based on an allegation of a *bona fide* intent to use the mark in commerce under Trademark Act Section 1(b), 15 U.S.C. § 1051(b).

Applicant, in its answers, denied the salient allegations of the notices of opposition. Additionally, applicant asserted the affirmative defenses: (1) that opposer failed to state a claim upon which relief can be granted and (2) that the use and registration by third parties of marks incorporating or consisting of the terms AMERICAN and EXPRESS preclude opposer from claiming the exclusive right to the use of those terms.

Initially, we note that applicant filed its motion for leave to amend its answers to include the affirmative defense of "noncommercial use" subsequent to its motion for summary judgment being fully briefed and only after opposer, in opposition to applicant's motion for summary judgment, noted that a party may not file a motion for summary judgment on an unpleaded claim or defense.

We recognize that a defendant may not obtain summary judgment on an unasserted defense. Fed. R. Civ. P. 56(a) and 56(b); see *also Giant Food, Inc. v. Standard Terry Mills, Inc.*, 229 USPQ 955, 961 (TTAB 1986). Indeed, the Board has long recognized that summary judgment is not appropriate on an unpleaded issue. *See* TBMP § 528.07 (2nd ed. rev. 2004). A party, however, is permitted to file a motion for summary judgment on an unpleaded issue concurrently with a motion to amend its pleading to include the unpleaded issue. *Societe des Produits Marnier*

*Lapostolle v. Distillerie Moccia S.R.L.*, 10 USPQ2d 1241, 1242 n.4 (TTAB 1989) (motion to amend to add new ground, filed simultaneously with motion for summary judgment, granted and allegations in new ground deemed denied).

But, in instances where, as here, a party has filed a motion for summary judgment on an unpleaded issue and subsequently files a motion to amend its pleading to add the unpleaded issue only after the non-moving party has responded by noting that a party may not obtain summary judgment on an unpleaded claim or defense, the Board has found that an acceptable cure for the procedural defect would be to withdraw the motion for summary judgment and re-file it on a date subsequent to the filing of the moving party's motion to amend its pleading. *See Karsten Manufacturing Corp. v. Editoy AG*, 79 USPQ2d 1783, 1785-86 (TTAB 2006). Applicant herein, however, did not follow the accepted procedure in *Karsten* nor did it argue that its failure to follow the *Karsten* approach should be excused. Nonetheless, while the Board could summarily deny applicant's motion for summary judgment on the ground it is based on an unpleaded issue and then consider on the merits only applicant's subsequently-filed motion to amend, such a course of action would be inefficient, as it could potentially lead to the approval of applicant's amended pleadings followed by the re-filing of applicant's motion

4

for summary judgment. Accordingly, in the interest of judicial economy and given the need for a slight clarification of procedure in this area, we will, in this case, first entertain applicant's motion for leave to amend its answers despite the fact that the motion for leave to amend was filed subsequent to applicant's motion for summary judgment.

We note that the *Karsten* decision stated, in regard to the timing of the motion to amend, "Here, opposer has corrected the problem of seeking summary judgment on an unpleaded ground by moving to amend its pleading prior to the Board acting on the initial motion for summary judgment." *Karsten*, 79 USPQ2d at 1786. This statement may be read to suggest that, so long as a party that has moved for summary judgment on an unpleaded issue moves to amend its pleading prior to the Board's consideration of the motion for summary judgment, the motion to amend would correct the problem presented by the summary judgment motion. Therefore, in this case, we have considered both applicant's motion to amend and its motion for summary judgment. However, in future cases, the Board will not hesitate to deny any motion for summary judgment on an unpleaded claim or defense unless the motion for summary judgment is accompanied by an appropriate motion to amend or is withdrawn and refiled with such a motion to amend.

Before entertaining the merits of applicant's motion for leave to amend, some review of applicant's explanation of why it wishes to invoke the "noncommercial use" exception defense is in order. Applicant contends that in 1855 the lithographers Currier & Ives published a print depicting an express train rolling through the rural American countryside titled American "Express" Train. *See* p. 1 of applicant's motion for summary judgment. Aware of and inspired by this Currier & Ives lithograph, applicant selected its GREAT AMERICAN EXPRESS and GREAT AMERICAN EXPRESS RAILROAD CLEVELAND AND COLUMBUS and design marks as an allusion to the American "Express" Train lithograph itself, as well as the nineteenth century history and era it evokes. *Id.* at pp. 1-2. In light of the foregoing, applicant contends that its marks, in addition to their intended service mark usage, serve as a form of artistic expression. *Id.* at p. 2.

Insofar as applicant filed its motion to amend its answers months after it filed its original answers in each respective opposition proceeding, applicant may amend its answers only by written consent of opposer or by leave of the Board. Fed. Civ. P. 15(a); TBMP § 507.02(a) (2d ed. rev. 2004). The Board liberally grants leave to amend pleadings at any stage of a proceeding when justice so requires, unless entry of the proposed amendment would violate settled law or be prejudicial to the rights of the

6

adverse party or parties. *Id. See also American Optical Corp. v. American Olean Tile Co.*, 168 USPQ 471 (TTAB 1971). In deciding whether to grant leave to amend, a tribunal may consider undue delay, prejudice to the opposing party, bad faith or dilatory motive, futility of the amendment, and whether the party has previously amended its pleadings. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

While applicant waited until approximately ten months after the filing of its answer in Opposition No. 91183362 and until approximately five months after the filing of its answer in Opposition No. 91186156 before filing its motion for leave to amend, the delay, while substantial, is not prejudicial to opposer, inasmuch as these consolidated proceedings are still in the discovery stage and opposer could be afforded time in which to take discovery on the newly asserted defense if it chooses to do so. Moreover, we find that applicant has not acted in bad faith nor has applicant abused its amendment privileges since this is the first time applicant has sought to amend its pleadings. The only significant question before us is whether applicant's proposed amendment is futile.

Applicant contends that since the Board may entertain a dilution claim under the TDRA and because the TDRA expressly includes "noncommercial use" as a defense to a dilution claim, the application of the affirmative defense in a Board

opposition proceeding would not violate settled law. In response, opposer contends the statutory "noncommercial use" exception cannot be asserted in an opposition proceeding because the Board's jurisdiction extends only to issues concerning registrability while the "noncommercial use" exception requires a determination of applicant's right to use its marks, and the proposed amendment therefore is futile. In reply, applicant claims that a party that uses its mark in commerce may still avail itself of the "noncommercial use" exception since the two concepts are not mutually exclusive. Applicant argues that there is no reason why use of a mark cannot be both "use in commerce" for purposes of registration and a "noncommercial use" for purposes of a dilution analysis. Finally, applicant contends that opposer is unable to cite to any authority which holds that the dilution exceptions under the TDRA are beyond the Board's consideration in an opposition proceeding.

Sections 13 and 14 of the Trademark Act permit a party to bring a dilution claim under the TDRA in *inter partes* proceedings before the Board. 15 U.S.C. §§ 1063 and 1064.

Section 43(c) of the TDRA provides defenses to such a claim, as follows:

> (3) Exclusions.--The following **shall not be actionable** as dilution by blurring or dilution by tarnishment under this subsection:

> (A) Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with-
>
>> (i) advertising or promotion that permits consumers to compare goods or services; or
>>
>> (ii) identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.
>
> (B) All forms of news reporting and news commentary.
>
> (C) **Any noncommercial use of a mark**.

15 U.S.C. § 1125(c)(3)(C)(emphasis added).

We note that the applicability of the "noncommercial use" exception as an affirmative defense to a dilution claim is an issue of first impression before the Board. For the reasons set forth below, the Board finds that the exception is inapplicable in Board dilution cases.

First, the definition of a "service mark" precludes the applicability of the "noncommercial use" exception in an *inter partes* proceeding.

> *Service mark.* The term "service mark" means any word, name, symbol, or device, or any combination thereof –
>
> (1) used by a person, or
>
> (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,
>
> to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown.

9

Trademark Act Section 45, 15 U.S.C. §1127.

By filing its two service mark applications, applicant is seeking to obtain federal service mark registrations which would afford applicant nationwide protection of, and exclusive rights in, its marks as source indicators for the services identified in its applications. In order to obtain such registrations, applicant must demonstrate, prior to registration, use of its marks as service marks in commerce. "Use in commerce means a bona fide use of a mark in the ordinary course of trade." Trademark Act Section 45. A service mark is used in commerce when the mark "is used or displayed in the sale or advertising of services [in this case transportation services] and the services are rendered in commerce." *Id.* As such, applicant cannot claim noncommercial use of its marks when it is required to demonstrate use of its marks in commerce as service marks in order to obtain federal registrations.[3] Indeed, it would contradict the purpose of the Trademark Act to allow a defendant in a Board dilution case to assert the "noncommercial use" exception as an affirmative defense when it must establish use of its mark in commerce as a trademark

---

[3] The Board notes that use of marks in conjunction with the rendering of free services still constitutes a "use in commerce" under the Trademark Act. In other words, a for profit sale is not required. See *Capital Speakers, Inc. v. Capital Speakers Club of Washington D.C. Inc.*, 41 USPQ2d 1030, 1035 fn. 3 (TTAB 1996).

or service mark in order to obtain a federal trademark or service mark registration.  In other words, a party cannot seek to register or maintain a trademark or service mark for its own exclusive use in commerce in association with its identified goods or services and then claim that it is not using its mark commercially as a defense to a dilution claim.

Accordingly, we find that the "noncommercial use" exception set out in Trademark Act § 43(c)(3)(C) does not apply in a Board proceeding involving a mark sought to be registered as a trademark or service mark, because an applicant seeking registration is necessarily relying on a claim of use of its mark, or intended use of its mark, in commerce.[4]

Second, one leading trademark scholar has suggested that if a defendant uses an alleged famous mark as a trademark for its own goods and services, then the defendant is disqualified from invoking the "noncommercial use" exception.  *See* J.T. McCarthy*, 4 McCarthy on Trademarks and Unfair Competition § 24:128 pp. 1-2 (4th ed. Database updated March 2010).  *See also*, H.R. Rep. No. 104-374 (1995)

---

[4] In a federal district court action the defendant whose actions are alleged to result in dilution may or may not be engaged in activities "in commerce," and therefore the applicability of the noncommercial use defense will depend on the nature of the involved activity.

11

in regard to the previous dilution statute's noncommercial use exception, unchanged in the TDRA. In other words, regardless of whether the use of the allegedly dilutive designation is in commerce or not, its use as a mark, per se, renders the noncommercial use defense inapplicable. Again, in a Board proceeding, just as every defendant is necessarily claiming use in commerce, or intended use in commerce, so too is the defendant necessarily claiming use as a mark, or intended use as a mark. We agree with Professor McCarthy's analysis.

Even if we were to find that the "noncommercial use" exception under the TDRA were applicable in Board proceedings, we note that applicant's use or intended use of its marks would not qualify as "noncommercial use." "Noncommercial use" has been referred to as constitutionally protected speech that consists of parody, satire, editorial and other forms of expression that are not part of a commercial transaction. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 63 USPQ2d 1715, 1722 (9th Cir. 2002).

Applicant has not alleged that it is using or intends to use its marks as editorial commentary, satire or as a parody, in regard to opposer's pleaded AMERICAN EXPRESS marks. Rather, applicant merely relies on several cases arising in Federal courts, none of which addressed the question of registrability. The first, *Am. Family Life Ins.*

12

*Co. v. Hagan*, 266 F. Supp. 2d 282, 64 USPQ2d 1865 (N.D. Ohio 2002), involved a gubernatorial candidate who, as part of his campaign, broadcast through a website commercials featuring an animated character named "TaftQuack." 64 USPQ2d at 1867. While the court found the duck's sounds to be highly reminiscent of the "AFLAC" sound made by plaintiff's duck, it held that the defendant's speech was noncommercial in nature as it discussed public issues and challenged the qualifications of a candidate for political office. 64 USPQ2d at 1875. Although visitors to defendant's website could donate money to his campaign, the court reasoned that it was arguable whether the defendant's speech proposed any commercial transaction at all. *Id*. The court held that since contributions to a political campaign are some of the most fundamental activities protected by the First Amendment, they are "properly classified not as commercial transactions at all, but completely noncommercial, political speech." *Id*.

Here, applicant is not using or intending to use its marks as constitutionally protected political speech. Accordingly, applicant's reliance on *Am. Family Life Ins. Co*. is misplaced. Rather, the services identified in applicant's application are to be rendered in commerce, namely, transporting passengers by means of a 19th century replica train.

The next case upon which applicant relies is *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 63 USPQ2d 1715 (9th Cir. 2002). Applicant argues, based on this Ninth Circuit case, that speech is protected by the First Amendment if it does something more than propose a commercial transaction. In *Mattel*, the defendant, a Danish musical band, produced the song "Barbie Girl." 63 USPQ2d at 1717. The court found that plaintiff's BARBIE doll was "not just a toy but a cultural icon," and that defendant's song pokes fun at the "Barbie" image. *Id*. at 1717, 1723. The court further found that "[t]he song does not rely on the Barbie mark to poke fun at another subject but targets Barbie herself." *Id*. at 1719. The court, therefore, held that the defendant's "Barbie Girl" song, although sold for profit, was protected under the First Amendment since it lampooned the "Barbie" image and commented humorously on the cultural values she represents. *Id*. at 1723.

In this instance, applicant is not using or intending to use its marks to parody or to make any type of social commentary regarding opposer, opposer's pleaded marks or the services associated therewith. Rather, applicant is merely seeking exclusive rights to use its marks as a source indicator for its identified commercial services. Accordingly, applicant's reliance on the *Mattel* decision is also misplaced.

14

Applicant also relies on the decision in *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 84 USPQ2d 1969 (4th Cir. 2007), to support its argument that a party may use its mark commercially while at the same time invoking the "noncommercial use" exception defense under the TDRA. Applicant, however, has misinterpreted the holding in the *Louis Vuitton* decision and its relevance to the issues before the Board. The court in *Louis Vuitton* specifically held that "although the TDRA does provide that fair use is a complete defense and allows that a parody can be considered fair use, it does not extend the fair use defense to parodies used as a trademark." 84 USPQ2d at 1978 (emphasis added). "Under the statute's plain language, parodying a famous mark is protected by the fair use defense only if the parody is *not* 'a designation of source for the person's own goods or services.'" *Id*.

We further note that the *Louis Vuitton* decision concerns the "fair use" exception and not the "noncommercial use" exception under the TDRA. On this point alone, the case is inapposite to the issue before the Board. Moreover, the court in *Louis Vuitton* held that if a party is using its mark as a trademark, as is the case herein with applicant, the "fair use" exception is inapplicable. Accordingly, if we were to analogize the "fair use" exception with the "noncommercial use" exception, the *Louis Vuitton* case would

15

contradict applicant's position, because applicant here intends to use and seeks to register its designations <u>as service marks</u>. Finally, unlike the defendant in the *Louis Vuitton* case, applicant is not using or intending to use its marks as a parody.

Applicant herein has merely chosen to adopt the marks GRAND AMERICAN EXPRESS and GRAND AMERICAN EXPRESS RAILROAD CLEVELAND AND COLUMBUS and design to evoke an historical era in connection with its identified transportation services based upon a lithograph by Currier & Ives. The mere fact that applicant may have chosen its marks for their historical significance or their evocation of another's art does not in and of itself create protected artistic expression or speech. If it were so, every dilution defendant employing a mark with any historical significance or artistic lineage could claim that its mark constitutes a form of artistic expression, and the exception would swallow the rule.

In sum, because Board proceedings are by their nature limited to issues regarding the registrability of trademarks or service marks, rather than song titles, product reviews, and other non-mark uses, and the involved marks necessarily are used or intended to be used in commerce as indicators of source for goods or services, the "noncommercial use" exception under the TDRA is not applicable as an affirmative

defense to a claim of dilution brought under the TDRA in Board proceedings

In view thereof, applicant's motion for leave to file an amended answer to include the affirmative defense of the "noncommercial use" exception is denied as futile. Applicant's initial answers to the notices of opposition remain as the operative pleadings herein. Accordingly, applicant's motion for summary judgment based on the inapplicable defense is denied.

The Board next turns to opposer's cross-motion for summary judgment on its asserted claims of likelihood of confusion and dilution.

In seeking summary judgment on its likelihood of confusion claim, opposer first contends that it has priority of use. Opposer also argues that its pleaded marks are similar to applicant's marks in sound, appearance, and commercial impression and that the parties' respective services are related. Specifically, opposer contends that applicant's marks completely encompass opposer's pleaded AMERICAN EXPRESS marks and that the mere addition, in one application, of the laudatory term GRAND is insufficient to distinguish the marks. Moreover, opposer argues that while it does not provide transportation services in the form of transport in a nineteenth century replica train, it nonetheless provides related travel services, including

17

transportation reservation and booking services. Opposer also contends that the parties' respective services will be provided to the same consumers and will travel through the same channels of trade.

In support of its dilution claim, opposer contends that the parties' respective marks are quite similar, that opposer's marks are famous, and that opposer's marks became famous prior to the filing dates of applicant's two subject applications and, as such, applicant's marks will dilute the distinctive quality of opposer's pleaded family of famous AMERICAN EXPRESS marks. In support of its motion for summary judgment on its asserted claims of likelihood of confusion and dilution, opposer has submitted the declarations of (1) Dianne K. Cahill, assistant secretary of opposer's marketing and development and (2) Boris Umanksy, counsel for opposer, both with accompanying exhibits.

In response, applicant contends that the parties' respective marks are dissimilar in appearance, pronunciation and commercial impression. Specifically, applicant argues that the addition of a design element in one of its marks, as well as the inclusion of the terms GRAND, RAILROAD, and CLEVELAND AND COLUMBUS, sufficiently distinguish the marks visually and aurally. Further, applicant contends that the term EXPRESS contained in applicant's marks, when viewed in the context of the services being provided under the marks,

18

conveys a commercial impression understood by consumers to be that of a train. Moreover, applicant argues that it provides actual transportation services while opposer only provides the arrangement of travel services and, therefore, the parties' respective services are not related. With respect to opposer's dilution claim, applicant merely relies on the "noncommercial use" exception under the TDRA as a genuine issue of material fact.

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law. *See* Fed. R. Civ. P. 56(c). A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law. *See Celotex Corp. v. Catret*t, 477 U.S. 317 (1986). The nonmoving party must be given the benefit of all reasonable doubt as to whether genuine issues of material fact exist, and the evidentiary record on summary judgment, and all inferences to be drawn from the undisputed facts, must be viewed in the light most favorable to the nonmoving party. *See Opryland USA, Inc. v. Great American Music Show, Inc.*, 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992).

After reviewing the arguments and supporting evidence, and drawing all inferences with respect to the motion in

favor of the nonmoving party, we find that opposer has failed to meet its burden of establishing that there are no genuine issues of material fact for trial.

With respect to opposer's likelihood of confusion claim, genuine issues of material fact exist as to the similarity between the marks at issue, particularly as to the similarity of the commercial impression engendered by applicant's marks and the commercial impression of opposer's marks. Further, the relatedness between the parties' respective goods and services, or lack thereof, is another genuine issue of material fact.

With respect to opposer's dilution claim, we also find that opposer, as the moving party, has failed to satisfy its initial burden in establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. In particular, genuine issues of material fact exist as to whether the marks at issue are sufficiently similar for dilution purposes, specifically, but not limited to, whether the marks evoke similar commercial impressions so that registration of applicant's marks would impair the alleged distinctiveness of opposer's pleaded marks.

Opposition No. 91183362
Opposition No. 91186156

In view thereof, opposer's cross-motion for summary judgment in regard to both its asserted claims of likelihood of confusion and dilution is denied.[5]

Proceedings herein are resumed. Trial dates for these consolidated proceedings, beginning with the deadline for expert disclosures, are reset as follows:

| | |
|---|---|
| Expert Disclosures Due | **6/15/2010** |
| Discovery Closes | **7/15/2010** |
| Plaintiff's Pretrial Disclosures | **8/29/2010** |
| Plaintiff's 30-day Trial Period Ends | **10/13/2010** |
| Defendant's Pretrial Disclosures | **10/28/2010** |
| Defendant's 30-day Trial Period Ends | **12/12/2010** |
| Plaintiff's Rebuttal Disclosures | **12/27/2010** |
| Plaintiff's 15-day Rebuttal Period Ends | **1/26/2011** |

In each instance, a copy of the transcript of testimony together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony. Trademark Rule 2.l25.

---

[5] The fact that we have identified certain genuine issues of material fact as a sufficient basis for denying opposer's motion for summary judgment should not be construed as a finding that such issues necessarily are the only issues that remain for trial. Also, the parties should note that the evidence submitted in connection with the motion for summary judgment is of record only for consideration of the motion. To be considered at final hearing, any such evidence must be properly introduced in evidence during the appropriate trial period. *See Hard Rock Cafe Licensing Corp. v. Elsea,* 48 USPQ2d 1400 (TTAB 1998); *Levi Strauss & Co. v. R. Josephs Sportswear Inc.*, 28 USPQ2d 1464 (TTAB 1993).

21

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b). An oral hearing will be set only upon request filed as provided by Trademark Rule 2.129.