PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LOUIS VUITTON MALLETIER S.A.,
        *Plaintiff-Appellant,*

v.

HAUTE DIGGITY DOG, LLC; VICTORIA
D.N. DAUERNHEIM; WOOFIES, LLC,
d/b/a Woofie's Pet Boutique,
        *Defendant-Appellees.*

No. 06-2267

INTERNATIONAL TRADEMARK
ASSOCIATION,
        *Amicus Supporting Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(1:06-cv-00321-JCC)

Argued: September 26, 2007

Decided: November 13, 2007

Before NIEMEYER and TRAXLER, Circuit Judges, and
Samuel G. WILSON, United States District Judge for the
Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Traxler and Judge Wilson joined.

**COUNSEL**

**ARGUED:** David Hal Bernstein, DEBEVOISE & PLIMPTON, L.L.P., New York, New York, for Amicus Supporting Appellant. Michael Abbott Grow, ARENT & FOX, P.L.L.C., Washington, D.C., for Appellant. James D. Petruzzi, MASON & PETRUZZI, Houston, Texas, for Appellees. **ON BRIEF:** Savalle C. Sims, Ross Panko, ARENT & FOX, P.L.L.C., Washington, D.C., for Appellant. W. Michael Holm, WOMBLE, CARLYLE, SANDRIDGE & RICE, Tyson's Corner, Virginia, for Appellees. Theodore H. Davis, Jr., Scot A. Duvall, Anne Gundelfinger, Steven Pokotilow, INTERNATIONAL TRADEMARK ASSOCIATION, New York, New York; Michael Potenza, Timothy T. Howard, DEBEVOISE & PLIMPTON, L.L.P., New York, New York, for Amicus Supporting Appellant.

---

**OPINION**

NIEMEYER, Circuit Judge:

Louis Vuitton Malletier S.A., a French corporation located in Paris, that manufactures luxury luggage, handbags, and accessories, commenced this action against Haute Diggity Dog, LLC, a Nevada corporation that manufactures and sells pet products nationally, alleging trademark infringement under 15 U.S.C. § 1114(1)(a), trademark dilution under 15 U.S.C. § 1125(c), copyright infringement under 17 U.S.C. § 501, and related statutory and common law violations. Haute Diggity Dog manufactures, among other things, plush toys on which dogs can chew, which, it claims, parody famous trademarks on luxury products, including those of Louis Vuitton Malletier. The particular Haute Diggity Dog chew toys in question here are small imitations of handbags that are labeled "Chewy Vuiton" and that mimic Louis Vuitton Malletier's LOUIS VUITTON handbags.

On cross-motions for summary judgment, the district court concluded that Haute Diggity Dog's "Chewy Vuiton" dog toys were successful parodies of Louis Vuitton Malletier's trademarks, designs, and products, and on that basis, entered judgment in favor of Haute Diggity Dog on all of Louis Vuitton Malletier's claims.

On appeal, we agree with the district court that Haute Diggity Dog's products are not likely to cause confusion with those of Louis Vuitton Malletier and that Louis Vuitton Malletier's copyright was not infringed. On the trademark dilution claim, however, we reject the district court's reasoning but reach the same conclusion through a different analysis. Accordingly, we affirm.

I

Louis Vuitton Malletier S.A. ("LVM") is a well known manufacturer of luxury luggage, leather goods, handbags, and accessories, which it markets and sells worldwide. In connection with the sale of its products, LVM has adopted trademarks and trade dress that are well recognized and have become famous and distinct. Indeed, in 2006, *BusinessWeek* ranked LOUIS VUITTON as the 17th "best brand" of all corporations in the world and the first "best brand" for any fashion business.

LVM has registered trademarks for "LOUIS VUITTON," in connection with luggage and ladies' handbags (the "LOUIS VUITTON mark"); for a stylized monogram of "LV," in connection with traveling bags and other goods (the "LV mark"); and for a monogram canvas design consisting of a canvas with repetitions of the LV mark along with four-pointed stars, four-pointed stars inset in curved diamonds, and four-pointed flowers inset in circles, in connection with traveling bags and other products (the "Monogram Canvas mark"). In 2002, LVM adopted a brightly-colored version of the Monogram Canvas mark in which the LV mark and the designs were of various colors and the background was white (the "Multicolor design"), created in collaboration with Japanese artist Takashi Murakami. For the Multicolor design, LVM obtained a copyright in 2004. In 2005, LVM adopted another design consisting of a canvas with repetitions of the LV mark and smiling cherries on a brown background (the "Cherry design").

As LVM points out, the Multicolor design and the Cherry design attracted immediate and extraordinary media attention and publicity in magazines such as *Vogue*, *W*, *Elle*, *Harper's Bazaar*, *Us Weekly*, *Life and Style*, *Travel & Leisure*, *People*, *In Style*, and *Jane*. The press published photographs showing celebrities carrying these handbags,

including Jennifer Lopez, Madonna, Eve, Elizabeth Hurley, Carmen Electra, and Anna Kournikova, among others. When the Multicolor design first appeared in 2003, the magazines typically reported, "The Murakami designs for Louis Vuitton, which were the hit of the summer, came with hefty price tags and a long waiting list." *People Magazine* said, "the wait list is in the thousands." The handbags retailed in the range of $995 for a medium handbag to $4500 for a large travel bag. The medium size handbag that appears to be the model for the "Chewy Vuiton" dog toy retailed for $1190. The Cherry design appeared in 2005, and the handbags including that design were priced similarly — in the range of $995 to $2740. LVM does not currently market products using the Cherry design.

The original LOUIS VUITTON, LV, and Monogram Canvas marks, however, have been used as identifiers of LVM products continuously since 1896.

During the period 2003-2005, LVM spent more than $48 million advertising products using its marks and designs, including more than $4 million for the Multicolor design. It sells its products exclusively in LVM stores and in its own in-store boutiques that are contained within department stores such as Saks Fifth Avenue, Bloomingdale's, Neiman Marcus, and Macy's. LVM also advertises its products on the Internet through the specific websites www.louisvuitton.com and www.eluxury.com.

Although better known for its handbags and luggage, LVM also markets a limited selection of luxury pet accessories — collars, leashes, and dog carriers — which bear the Monogram Canvas mark and the Multicolor design. These items range in price from approximately $200 to $1600. LVM does not make dog toys.

Haute Diggity Dog, LLC, which is a relatively small and relatively new business located in Nevada, manufactures and sells nationally — primarily through pet stores — a line of pet chew toys and beds whose names parody elegant high-end brands of products such as perfume, cars, shoes, sparkling wine, and handbags. These include — in addition to Chewy Vuiton (LOUIS VUITTON) — Chewnel No. 5 (Chanel No. 5), Furcedes (Mercedes), Jimmy Chew (Jimmy Choo), Dog Perignonn (Dom Perignon), Sniffany & Co. (Tiffany & Co.), and

Dogior (Dior). The chew toys and pet beds are plush, made of polyester, and have a shape and design that loosely imitate the signature product of the targeted brand. They are mostly distributed and sold through pet stores, although one or two Macy's stores carries Haute Diggity Dog's products. The dog toys are generally sold for less than $20, although larger versions of some of Haute Diggity Dog's plush dog beds sell for more than $100.

Haute Diggity Dog's "Chewy Vuiton" dog toys, in particular, loosely resemble miniature handbags and undisputedly evoke LVM handbags of similar shape, design, and color. In lieu of the LOUIS VUITTON mark, the dog toy uses "Chewy Vuiton"; in lieu of the LV mark, it uses "CV"; and the other symbols and colors employed are imitations, but not exact ones, of those used in the LVM Multicolor and Cherry designs.

In 2002, LVM commenced this action, naming as defendants Haute Diggity Dog; Victoria D.N. Dauernheim, the principal owner of Haute Diggity Dog; and Woofies, LLC, a retailer of Haute Diggity Dog's products, located in Asburn, Virginia, for trademark, trade dress, and copyright infringement. Its complaint includes counts for trademark counterfeiting, under 15 U.S.C. § 1114(1)(a); trademark infringement, under 15 U.S.C. § 1114(1)(a); trade dress infringement, under 15 U.S.C. § 1125(a)(1); unfair competition, under 15 U.S.C. § 1125(a)(1); trademark dilution, under 15 U.S.C. § 1125(c); trademark infringement, under Virginia common law; trade dress infringement, under Virginia common law; unfair competition, under Virginia common law; copyright infringement of the Multicolor design, under 17 U.S.C. § 501; and violation of the Virginia Consumer Protection Act, under Virginia Code § 59.1-200. On cross-motions for summary judgment, the district court granted Haute Diggity Dog's motion and denied LVM's motion, entering judgment in favor of Haute Diggity Dog on all of the claims. It rested its analysis on each count principally on the conclusion that Haute Diggity Dog's products amounted to a successful parody of LVM's marks, trade dress, and copyright. See *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 464 F. Supp. 2d 495 (E.D. Va. 2006).

LVM appealed and now challenges, as a matter of law, virtually every ruling made by the district court.

II

LVM contends first that Haute Diggity Dog's marketing and sale of its "Chewy Vuiton" dog toys infringe its trademarks because the advertising and sale of the "Chewy Vuiton" dog toys is likely to cause confusion. *See* 15 U.S.C. § 1114(1)(a). LVM argues:

> The defendants in this case are using almost an exact imitation of the house mark VUITTON (merely omitting a second "T"), and they painstakingly copied Vuitton's Monogram design mark, right down to the exact arrangement and sequence of geometric symbols. They also used the same design marks, trade dress, and color combinations embodied in Vuitton's Monogram Multicolor and Monogram Cerises [Cherry] handbag collections. Moreover, HDD did not add any language to distinguish its products from Vuitton's, and its products are not "widely recognized."[1]

Haute Diggity Dog contends that there is no evidence of confusion, nor could a reasonable factfinder conclude that there is a likelihood of confusion, because it successfully markets its products as parodies of famous marks such as those of LVM. It asserts that "precisely because of the [famous] mark's fame and popularity . . . confusion is avoided, and it is this lack of confusion that a parodist depends upon to achieve the parody." Thus, responding to LVM's claims of trademark infringement, Haute Diggity Dog argues:

> The marks are undeniably similar in certain respects. There are visual and phonetic similarities. [Haute Diggity Dog]

---

[1]We take this argument to be that Haute Diggity Dog is copying too closely the marks and trade dress of LVM. But we reject the statement that LVM has a trademark consisting of the one word VUITTON. At oral argument, counsel for LVM conceded that the trademark is "LOUIS VUITTON," and it is always used in that manner rather than simply as "VUITTON." It appears that LVM has employed this technique to provide a more narrow, but irrelevant, comparison between its VUITTON and Haute Diggity Dog's "Vuiton." In resolving this case, however, we take LVM's arguments to compare "LOUIS VUITTON" with Haute Diggity Dog's "Chewy Vuiton."

admits that the product name and design mimics LVM's and is based on the LVM marks. It is necessary for the pet products to conjure up the original designer mark for there to be a parody at all. However, a parody also relies on "equally obvious dissimilarit[ies] between the marks" to produce its desired effect.

Concluding that Haute Diggity Dog did not create any likelihood of confusion as a matter of law, the district court granted summary judgment to Haute Diggity Dog. *Louis Vuitton Malletier*, 464 F. Supp. 2d at 503, 508. We review its order *de novo*. *See CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006).

To prove trademark infringement, LVM must show (1) that it owns a valid and protectable mark; (2) that Haute Diggity Dog uses a "reproduction, counterfeit, copy, or colorable imitation" of that mark in commerce and without LVM's consent; and (3) that Haute Diggity Dog's use is likely to cause confusion. 15 U.S.C. § 1114(1)(a); *CareFirst*, 434 F.3d at 267. The validity and protectability of LVM's marks are not at issue in this case, nor is the fact that Haute Diggity Dog uses a colorable imitation of LVM's mark. Therefore, we give the first two elements no further attention. To determine whether the "Chewy Vuiton" product line creates a likelihood of confusion, we have identified several nonexclusive factors to consider: (1) the strength or distinctiveness of the plaintiff's mark; (2) the similarity of the two marks; (3) the similarity of the goods or services the marks identify; (4) the similarity of the facilities the two parties use in their businesses; (5) the similarity of the advertising used by the two parties; (6) the defendant's intent; and (7) actual confusion. *See Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). These *Pizzeria Uno* factors are not always weighted equally, and not all factors are relevant in every case. *See CareFirst*, 434 F.3d at 268.

Because Haute Diggity Dog's arguments with respect to the *Pizzeria Uno* factors depend to a great extent on whether its products and marks are successful parodies, we consider first whether Haute Diggity Dog's products, marks, and trade dress are indeed successful parodies of LVM's marks and trade dress.

For trademark purposes, "[a] 'parody' is defined as a simple form of entertainment conveyed by juxtaposing the irreverent representa-

tion of the trademark with the idealized image created by the mark's owner." *People for the Ethical Treatment of Animals v. Doughney* ("*PETA*"), 263 F.3d 359, 366 (4th Cir. 2001) (internal quotation marks omitted). "A parody must convey two simultaneous — and contradictory — messages: that it is the original, but also that it is *not* the original and is instead a parody." *Id.* (internal quotation marks and citation omitted). This second message must not only differentiate the alleged parody from the original but must also communicate some articulable element of satire, ridicule, joking, or amusement. Thus, "[a] parody relies upon a difference from the original mark, presumably a humorous difference, in order to produce its desired effect." *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1486 (10th Cir. 1987) (finding the use of "Lardashe" jeans for larger women to be a successful and permissible parody of "Jordache" jeans).

When applying the *PETA* criteria to the facts of this case, we agree with the district court that the "Chewy Vuiton" dog toys are successful parodies of LVM handbags and the LVM marks and trade dress used in connection with the marketing and sale of those handbags. First, the pet chew toy is obviously an irreverent, and indeed intentional, representation of an LVM handbag, albeit much smaller and coarser. The dog toy is shaped roughly like a handbag; its name "Chewy Vuiton" sounds like and rhymes with LOUIS VUITTON; its monogram CV mimics LVM's LV mark; the repetitious design clearly imitates the design on the LVM handbag; and the coloring is similar. In short, the dog toy is a small, plush imitation of an LVM handbag carried by women, which invokes the marks and design of the handbag, albeit irreverently and incompletely. No one can doubt that LVM handbags are the target of the imitation by Haute Diggity Dog's "Chewy Vuiton" dog toys.

At the same time, no one can doubt also that the "Chewy Vuiton" dog toy is not the "idealized image" of the mark created by LVM. The differences are immediate, beginning with the fact that the "Chewy Vuiton" product is a dog toy, not an expensive, luxury LOUIS VUITTON handbag. The toy is smaller, it is plush, and virtually all of its designs differ. Thus, "Chewy Vuiton" is not LOUIS VUITTON ("Chewy" is not "LOUIS" and "Vuiton" is not "VUITTON," with its two Ts); CV is not LV; the designs on the dog toy are simplified and

crude, not detailed and distinguished. The toys are inexpensive; the handbags are expensive and marketed to be expensive. And, of course, as a dog toy, one must buy it with pet supplies and cannot buy it at an exclusive LVM store or boutique within a department store. In short, the Haute Diggity Dog "Chewy Vuiton" dog toy undoubtedly and deliberately conjures up the famous LVM marks and trade dress, but at the same time, it communicates that it is not the LVM product.

Finally, the juxtaposition of the similar and dissimilar — the irreverent representation and the idealized image of an LVM handbag — immediately conveys a joking and amusing parody. The furry little "Chewy Vuiton" imitation, as something to be *chewed by a dog*, pokes fun at the elegance and expensiveness of a LOUIS VUITTON handbag, which must *not* be chewed by a dog. The LVM handbag is provided for the most elegant and well-to-do celebrity, to proudly display to the public and the press, whereas the imitation "Chewy Vuiton" "handbag" is designed to mock the celebrity and be used by a dog. The dog toy irreverently presents haute couture as an object for casual canine destruction. The satire is unmistakable. The dog toy is a comment on the rich and famous, on the LOUIS VUITTON name and related marks, and on conspicuous consumption in general. This parody is enhanced by the fact that "Chewy Vuiton" dog toys are sold with similar parodies of other famous and expensive brands — "Chewnel No. 5" targeting "Chanel No. 5"; "Dog Perignonn" targeting "Dom Perignon"; and "Sniffany & Co." targeting "Tiffany & Co."

We conclude that the *PETA* criteria are amply satisfied in this case and that the "Chewy Vuiton" dog toys convey "just enough of the original design to allow the consumer to appreciate the point of parody," but stop well short of appropriating the entire marks that LVM claims. *PETA*, 263 F.3d at 366 (quoting *Jordache*, 828 F.2d at 1486).

Finding that Haute Diggity Dog's parody is successful, however, does not end the inquiry into whether Haute Diggity Dog's "Chewy Vuiton" products create a likelihood of confusion. *See* 6 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 31:153, at 262 (4th ed. 2007) ("There are confusing parodies and non-confusing parodies. All they have in common is an attempt at humor through the use of someone else's trademark"). The finding of a successful parody only

influences the way in which the *Pizzeria Uno* factors are applied. *See, e.g.*, *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 321 (4th Cir. 1992) (observing that parody alters the likelihood-of-confusion analysis). Indeed, it becomes apparent that an effective parody will actually diminish the likelihood of confusion, while an ineffective parody does not. We now turn to the *Pizzeria Uno* factors.

A

As to the first *Pizzeria Uno* factor, the parties agree that LVM's marks are strong and widely recognized. They do not agree, however, as to the consequences of this fact. LVM maintains that a strong, famous mark is entitled, as a matter of law, to broad protection. While it is true that finding a mark to be strong and famous usually favors the plaintiff in a trademark infringement case, the opposite may be true when a legitimate claim of parody is involved. As the district court observed, "In cases of parody, a strong mark's fame and popularity is precisely the mechanism by which likelihood of confusion is avoided." *Louis Vuitton Malletier*, 464 F. Supp. 2d at 499 (citing *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 503-04 (2d Cir. 1996); *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 850 F. Supp. 232, 248 (S.D.N.Y. 1994)). "An intent to parody is not an intent to confuse the public." *Jordache*, 828 F.2d at 1486.

We agree with the district court. It is a matter of common sense that the strength of a famous mark allows consumers immediately to perceive the target of the parody, while simultaneously allowing them to recognize the changes to the mark that make the parody funny or biting. *See Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 416 (S.D.N.Y. 2002) (noting that the strength of the "TOMMY HILFIGER" fashion mark did not favor the mark's owner in an infringement case against "TIMMY HOLEDIGGER" novelty pet perfume). In this case, precisely because LOUIS VUITTON is so strong a mark and so well recognized as a luxury handbag brand from LVM, consumers readily recognize that when they see a "Chewy Vuiton" pet toy, they see a parody. Thus, the strength of LVM's marks in this case does not help LVM establish a likelihood of confusion.

B

With respect to the second *Pizzeria Uno* factor, the similarities between the marks, the usage by Haute Diggity Dog again converts

what might be a problem for Haute Diggity Dog into a disfavored conclusion for LVM.

Haute Diggity Dog concedes that its marks are and were designed to be somewhat similar to LVM's marks. But that is the essence of a parody — the invocation of a famous mark in the consumer's mind, so long as the distinction between the marks is also readily recognized. While a trademark parody necessarily copies enough of the original design to bring it to mind as a target, a successful parody also distinguishes itself and, because of the implicit message communicated by the parody, allows the consumer to appreciate it. *See PETA*, 263 F.3d at 366 (citing *Jordache*, 828 F.2d at 1486); *Anheuser-Busch*, 962 F.2d at 321.

In concluding that Haute Diggity Dog has a successful parody, we have impliedly concluded that Haute Diggity Dog appropriately mimicked a part of the LVM marks, but at the same time sufficiently distinguished its own product to communicate the satire. The differences are sufficiently obvious and the parody sufficiently blatant that a consumer encountering a "Chewy Vuiton" dog toy would not mistake its source or sponsorship on the basis of mark similarity.

This conclusion is reinforced when we consider how the parties actually use their marks in the marketplace. *See CareFirst*, 434 F.3d at 267 (citing *What-A-Burger of Va., Inc. v. Whataburger, Inc.*, 357 F.3d 441, 450 (4th Cir. 2004)); *Lamparello v. Falwell*, 420 F.3d 309, 316 (4th Cir. 2005); *Hormel Foods*, 73 F.3d at 503. The record amply supports Haute Diggity Dog's contention that its "Chewy Vuiton" toys for dogs are generally sold alongside other pet products, as well as toys that parody other luxury brands, whereas LVM markets its handbags as a top-end luxury item to be purchased only in its own stores or in its own boutiques within department stores. These marketing channels further emphasize that "Chewy Vuiton" dog toys are not, in fact, LOUIS VUITTON products.

## C

Nor does LVM find support from the third *Pizzeria Uno* factor, the similarity of the products themselves. It is obvious that a "Chewy Vuiton" plush imitation handbag, which does not open and is manu-

factured as a dog toy, is not a LOUIS VUITTON handbag sold by LVM. Even LVM's most proximate products — dog collars, leashes, and pet carriers — are fashion accessories, not dog toys. As Haute Diggity Dog points out, LVM does not make pet chew toys and likely does not intend to do so in the future. Even if LVM were to make dog toys in the future, the fact remains that the products at issue are not similar in any relevant respect, and this factor does not favor LVM.

### D

The fourth and fifth *Pizzeria Uno* factors, relating to the similarity of facilities and advertising channels, have already been mentioned. LVM products are sold exclusively through its own stores or its own boutiques within department stores. It also sells its products on the Internet through an LVM-authorized website. In contrast, "Chewy Vuiton" products are sold primarily through traditional and Internet pet stores, although they might also be sold in some department stores. The record demonstrates that both LVM handbags and "Chewy Vuiton" dog toys are sold at a Macy's department store in New York. As a general matter, however, there is little overlap in the individual retail stores selling the brands.

Likewise with respect to advertising, there is little or no overlap. LVM markets LOUIS VUITTON handbags through high-end fashion magazines, while "Chewy Vuiton" products are advertised primarily through pet-supply channels.

The overlap in facilities and advertising demonstrated by the record is so minimal as to be practically nonexistent. "Chewy Vuiton" toys and LOUIS VUITTON products are neither sold nor advertised in the same way, and the *de minimis* overlap lends insignificant support to LVM on this factor.

### E

The sixth factor, relating to Haute Diggity Dog's intent, again is neutralized by the fact that Haute Diggity Dog markets a parody of LVM products. As other courts have recognized, "An intent to parody is not an intent to confuse the public." *Jordache*, 828 F.2d at 1486.

Despite Haute Diggity Dog's obvious intent to profit from its use of parodies, this action does not amount to a bad faith intent to create consumer confusion. To the contrary, the intent is to do just the opposite — to evoke a humorous, satirical association that *distinguishes* the products. This factor does not favor LVM.

### F

On the actual confusion factor, it is well established that no actual confusion is required to prove a case of trademark infringement, although the presence of actual confusion can be persuasive evidence relating to a likelihood of confusion. *See CareFirst*, 434 F.3d at 268.

While LVM conceded in the district court that there was no evidence of actual confusion, on appeal it points to incidents where retailers misspelled "Chewy Vuiton" on invoices or order forms, using two Ts instead of one. Many of these invoices also reflect simultaneous orders for multiple types of Haute Diggity Dog parody products, which belies the notion that any actual confusion existed as to the source of "Chewy Vuiton" plush toys. The misspellings pointed out by LVM are far more likely in this context to indicate confusion over how to spell the product name than any confusion over the source or sponsorship of the "Chewy Vuiton" dog toys. We conclude that this factor favors Haute Diggity Dog.

In sum, the likelihood-of-confusion factors substantially favor Haute Diggity Dog. But consideration of these factors is only a proxy for the ultimate statutory test of whether Haute Diggity Dog's marketing, sale, and distribution of "Chewy Vuiton" dog toys is likely to cause confusion. Recognizing that "Chewy Vuiton" is an obvious parody and applying the *Pizzeria Uno* factors, we conclude that LVM has failed to demonstrate any likelihood of confusion. Accordingly, we affirm the district court's grant of summary judgment in favor of Haute Diggity Dog on the issue of trademark infringement.

### III

LVM also contends that Haute Diggity Dog's advertising, sale, and distribution of the "Chewy Vuiton" dog toys dilutes its LOUIS VUIT-

TON, LV, and Monogram Canvas marks, which are famous and distinctive, in violation of the Trademark Dilution Revision Act of 2006 ("TDRA"), 15 U.S.C.A. § 1125(c) (West Supp. 2007). It argues, "Before the district court's decision, Vuitton's famous marks were unblurred by any third party trademark use." "Allowing defendants to become the first to use similar marks will obviously blur and dilute the Vuitton Marks." It also contends that "Chewy Vuiton" dog toys are likely to tarnish LVM's marks because they "pose a choking hazard for some dogs."

Haute Diggity Dog urges that, in applying the TDRA to the circumstances before us, we reject LVM's suggestion that a parody "automatically" gives rise to "actionable dilution." Haute Diggity Dog contends that only marks that are "identical or substantially similar" can give rise to actionable dilution, and its "Chewy Vuiton" marks are not identical or sufficiently similar to LVM's marks. It also argues that "[its] spoof, like other obvious parodies," "'tends to increase public identification' of [LVM's] mark with [LVM]," quoting *Jordache*, 828 F.2d at 1490, rather than impairing its distinctiveness, as the TDRA requires. As for LVM's tarnishment claim, Haute Diggity Dog argues that LVM's position is at best based on speculation and that LVM has made no showing of a likelihood of dilution by tarnishment.

Claims for trademark dilution are authorized by the TDRA, a relatively recent enactment,[2] which provides in relevant part:

> Subject to the principles of equity, the owner of a *famous* mark . . . shall be entitled to an injunction against another

---

[2]The TDRA, Pub. L. No. 109-312, 120 Stat. 1730 (2006), amended the Federal Trademark Dilution Act of 1995, Pub. L. No. 104-98, 109 Stat. 985 (1996), which added a "dilution" cause of action to § 43 of the Lanham Act. When the Supreme Court held that the Federal Trademark Dilution Act required proof of actual dilution and actual economic harm, *see Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 432-33 (2003); *see also Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d 449, 461 (4th Cir. 1999), Congress amended the Act principally to overrule *Moseley* and to require that only a *likelihood* of dilution need be proved. *See* 15 U.S.C.A. § 1125(c)(1) (West Supp. 2007).

person who . . . commences use of a mark or trade name in commerce that is likely to cause *dilution by blurring* or *dilution by tarnishment* of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C.A. § 1125(c)(1) (emphasis added). A mark is "famous" when it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *Id.* § 1125(c)(2)(A). Creating causes of action for only *dilution by blurring* and *dilution by tarnishment*, the TDRA defines "dilution by blurring" as the "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." *Id.* § 1125(c)(2)(B). It defines "dilution by tarnishment" as the "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." *Id.* § 1125(c)(2)(C).

Thus, to state a dilution claim under the TDRA, a plaintiff must show:

> (1)    that the plaintiff owns a famous mark that is distinctive;

> (2)    that the defendant has commenced using a mark in commerce that allegedly is diluting the famous mark;

> (3)    that a similarity between the defendant's mark and the famous mark gives rise to an association between the marks; and

> (4)    that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark.

In the context of blurring, distinctiveness refers to the ability of the famous mark uniquely to identify a single source and thus maintain its selling power. *See N.Y. Stock Exch. v. N.Y., N.Y. Hotel LLC*, 293 F.3d 550, 558 (2d Cir. 2002) (observing that blurring occurs where

the defendant's use creates "the possibility that the [famous] mark will lose its ability to serve as a unique identifier of the plaintiff's product") (*quoting Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994)); *Playboy Entm't, Inc. v. Welles*, 279 F.3d 796, 805 (9th Cir. 2002) (same). In proving a dilution claim under the TDRA, the plaintiff need not show actual or likely confusion, the presence of competition, or actual economic injury. *See* 15 U.S.C.A. § 1125(c)(1).

The TDRA creates three defenses based on the defendant's (1) "fair use" (with exceptions); (2) "news reporting and news commentary"; and (3) "noncommercial use." *Id.* § 1125(c)(3).

A

We address first LVM's claim for dilution by blurring.

The first three elements of a trademark dilution claim are not at issue in this case. LVM owns famous marks that are distinctive; Haute Diggity Dog has commenced using "Chewy Vuiton," "CV," and designs and colors that are allegedly diluting LVM's marks; and the similarity between Haute Diggity Dog's marks and LVM's marks gives rise to an association between the marks, albeit a parody. The issue for resolution is whether the association between Haute Diggity Dog's marks and LVM's marks is likely to impair the distinctiveness of LVM's famous marks.

In deciding this issue, the district court correctly outlined the six factors to be considered in determining whether dilution by blurring has been shown. *See* 15 U.S.C.A. § 1125(c)(2)(B). But in evaluating the facts of the case, the court did not directly apply those factors it enumerated. It held simply:

> [The famous mark's] strength is not likely to be blurred by a parody dog toy product. Instead of blurring Plaintiff's mark, the success of the parodic use depends upon the continued association with LOUIS VUITTON.

*Louis Vuitton Malletier*, 464 F. Supp. 2d at 505. The amicus supporting LVM's position in this case contends that the district court, by not

applying the statutory factors, misapplied the TDRA to conclude that simply because Haute Diggity Dog's product was a parody meant that "there can be no *association* with the famous mark as a matter of law." Moreover, the amicus points out correctly that to rule in favor of Haute Diggity Dog, the district court was required to find that the "association" did not impair the distinctiveness of LVM's famous mark.

LVM goes further in its own brief, however, and contends:

> When a defendant uses an imitation of a famous mark in connection with related goods, a claim of parody cannot preclude liability for dilution.

> \*      \*      \*

> The district court's opinion utterly ignores the substantial goodwill VUITTON has established in its famous marks through more than a century of *exclusive* use. Disregarding the clear Congressional mandate to protect such famous marks against dilution, the district court has granted [Haute Diggity Dog] permission to become the first company other than VUITTON to use imitations of the famous VUITTON Marks.

In short, LVM suggests that any use by a third person of an imitation of its famous marks dilutes the famous marks as a matter of law. This contention misconstrues the TDRA.

The TDRA prohibits a person from using a junior mark that is likely to dilute (by blurring) the famous mark, and blurring is defined to be an impairment to the famous mark's distinctiveness. "Distinctiveness" in turn refers to the public's recognition that the famous mark identifies a single source of the product using the famous mark.

To determine whether a junior mark is likely to dilute a famous mark through blurring, the TDRA directs the court to consider all factors relevant to the issue, including six factors that are enumerated in the statute:

(i)    The degree of similarity between the mark or trade name and the famous mark.

(ii)    The degree of inherent or acquired distinctiveness of the famous mark.

(iii)    The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

(iv)    The degree of recognition of the famous mark.

(v)    Whether the user of the mark or trade name intended to create an association with the famous mark.

(vi)    Any actual association between the mark or trade name and the famous mark.

15 U.S.C.A. § 1125(c)(2)(B). Not every factor will be relevant in every case, and not every blurring claim will require extensive discussion of the factors. But a trial court must offer a sufficient indication of which factors it has found persuasive and explain why they are persuasive so that the court's decision can be reviewed. The district court did not do this adequately in this case. Nonetheless, after we apply the factors as a matter of law, we reach the same conclusion reached by the district court.

We begin by noting that parody is not automatically a complete *defense* to a claim of dilution by blurring where the defendant uses the parody as its own designation of source, i.e., *as a trademark*. Although the TDRA does provide that fair use is a complete defense and allows that a parody can be considered fair use, it does not extend the fair use defense to parodies used as a trademark. As the statute provides:

> The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:
>
> > (A)   Any fair use . . . *other than as a designation of source for the person's own goods or services*,

> including use in connection with . . . parodying
> . . . .

15 U.S.C.A. § 1125(c)(3)(A)(ii) (emphasis added). Under the statute's plain language, parodying a famous mark is protected by the fair use defense only if the parody is *not* "a designation of source for the person's own goods or services."

The TDRA, however, does not require a court to ignore the existence of a parody that is used as a trademark, and it does not preclude a court from considering parody as part of the circumstances to be considered for determining whether the plaintiff has made out a claim for dilution by blurring. Indeed, the statute permits a court to consider "all relevant factors," including the six factors supplied in § 1125(c)(2)(B).

Thus, it would appear that a defendant's use of a mark as a parody is relevant to the overall question of whether the defendant's use is likely to impair the famous mark's distinctiveness. Moreover, the fact that the defendant uses its marks as a parody is specifically relevant to several of the listed factors. For example, factor (v) (whether the defendant intended to create an association with the famous mark) and factor (vi) (whether there exists an actual association between the defendant's mark and the famous mark) directly invite inquiries into the defendant's intent in using the parody, the defendant's actual use of the parody, and the effect that its use has on the famous mark. While a parody intentionally creates an association with the famous mark in order to be a parody, it also intentionally communicates, if it is successful, that it is *not* the famous mark, but rather a satire of the famous mark. *See PETA*, 263 F.3d at 366. That the defendant is using its mark as a parody is therefore relevant in the consideration of these statutory factors.

Similarly, factors (i), (ii), and (iv) — the degree of similarity between the two marks, the degree of distinctiveness of the famous mark, and its recognizability — are directly implicated by consideration of the fact that the defendant's mark is a successful parody. Indeed, by making the famous mark an object of the parody, a successful parody might actually enhance the famous mark's distinctiveness by making it an icon. The brunt of the joke becomes yet more

famous. *See Hormel Foods*, 73 F.3d at 506 (observing that a success-ful parody "tends to increase public identification" of the famous mark with its source); *see also Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F. Supp. 267, 272-82 (S.D.N.Y. 1992) (suggesting that a sufficiently obvious parody is unlikely to blur the targeted famous mark).

In sum, while a defendant's use of a parody as a mark does not support a "fair use" defense, it may be considered in determining whether the plaintiff-owner of a famous mark has proved its claim that the defendant's use of a parody mark is likely to impair the dis-tinctiveness of the famous mark.

In the case before us, when considering factors (ii), (iii), and (iv), it is readily apparent, indeed conceded by Haute Diggity Dog, that LVM's marks are distinctive, famous, and strong. The LOUIS VUIT-TON mark is well known and is commonly identified as a brand of the great Parisian fashion house, Louis Vuitton Malletier. So too are its other marks and designs, which are invariably used with the LOUIS VUITTON mark. It may not be too strong to refer to these famous marks as icons of high fashion.

While the establishment of these facts satisfies essential elements of LVM's dilution claim, *see* 15 U.S.C.A. § 1125(c)(1), the facts impose on LVM an increased burden to demonstrate that the distinc-tiveness of its famous marks is likely to be impaired by a successful parody. Even as Haute Diggity Dog's parody mimics the famous mark, it communicates simultaneously that it is not the famous mark, but is only satirizing it. *See PETA*, 263 F.3d at 366. And because the famous mark is particularly strong and distinctive, it becomes more likely that a parody will not impair the distinctiveness of the mark. In short, as Haute Diggity Dog's "Chewy Vuiton" marks are a successful parody, we conclude that they will not blur the distinctiveness of the famous mark as a unique identifier of its source.

It is important to note, however, that this might not be true if the parody is so similar to the famous mark that it likely could be con-strued as actual use of the famous mark itself. Factor (i) directs an inquiry into the "degree of similarity between the junior mark and the famous mark. If Haute Diggity Dog used the actual marks of LVM

(as a parody or otherwise), it could dilute LVM's marks by blurring, regardless of whether Haute Diggity Dog's use was confusingly similar, whether it was in competition with LVM, or whether LVM sustained actual injury. *See* 15 U.S.C.A. § 1125(c)(1). Thus, "the use of DUPONT shoes, BUICK aspirin, and KODAK pianos would be actionable" under the TDRA because the unauthorized use of the famous marks *themselves* on unrelated goods might diminish the capacity of these trademarks to distinctively identify a single source. *Moseley*, 537 U.S. at 431 (quoting H.R. Rep. No. 104-374, at 3 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 1029, 1030). This is true even though a consumer would be unlikely to confuse the manufacturer of KODAK film with the hypothetical producer of KODAK pianos.

But in this case, Haute Diggity Dog mimicked the famous marks; it did not come so close to them as to destroy the success of its parody and, more importantly, to diminish the LVM marks' capacity to identify a single source. Haute Diggity Dog designed a pet chew toy to imitate and suggest, but not *use*, the marks of a high-fashion LOUIS VUITTON handbag. It used "Chewy Vuiton" to mimic "LOUIS VUITTON"; it used "CV" to mimic "LV"; and it adopted *imperfectly* the items of LVM's designs. We conclude that these uses by Haute Diggity Dog were not so similar as to be likely to impair the distinctiveness of LVM's famous marks.

In a similar vein, when considering factors (v) and (vi), it becomes apparent that Haute Diggity Dog intentionally associated its marks, but only partially and certainly imperfectly, so as to convey the simultaneous message that it was not in fact a source of LVM products. Rather, as a parody, it separated itself from the LVM marks in order to make fun of them.

In sum, when considering the relevant factors to determine whether blurring is likely to occur in this case, we readily come to the conclusion, as did the district court, that LVM has failed to make out a case of trademark dilution by blurring by failing to establish that the distinctiveness of its marks was likely to be impaired by Haute Diggity Dog's marketing and sale of its "Chewy Vuiton" products.

B

LVM's claim for dilution by tarnishment does not require an extended discussion. To establish its claim for dilution by tarnishment, LVM must show, in lieu of blurring, that Haute Diggity Dog's use of the "Chewy Vuiton" mark on dog toys harms the reputation of the LOUIS VUITTON mark and LVM's other marks. LVM argues that the possibility that a dog could choke on a "Chewy Vuiton" toy causes this harm. LVM has, however, provided no record support for its assertion. It relies only on speculation about whether a dog could choke on the chew toys and a logical concession that a $10 dog toy made in China was of "inferior quality" to the $1190 LOUIS VUIT-TON handbag. The speculation begins with LVM's assertion in its brief that "defendant Woofie's admitted that 'Chewy Vuiton' products pose a choking hazard for some dogs. Having prejudged the defendant's mark to be a parody, the district court made light of this admission in its opinion, and utterly failed to give it the weight it deserved," citing to a page in the district court's opinion where the court states:

> At oral argument, plaintiff provided only a flimsy theory that a pet may some day choke on a Chewy Vuiton squeak toy and incite the wrath of a confused consumer against LOUIS VUITTON.

*Louis Vuitton Malletier*, 464 F. Supp. 2d at 505. The court was referring to counsel's statement during oral argument that the owner of Woofie's stated that "she would not sell this product to certain types of dogs because there is a danger they would tear it open and choke on it." There is no record support, however, that any dog has choked on a pet chew toy, such as a "Chewy Vuiton" toy, or that there is any basis from which to conclude that a dog would likely choke on such a toy.

We agree with the district court that LVM failed to demonstrate a claim for dilution by tarnishment. *See Hormel Foods*, 73 F.3d at 507.

IV

LVM raises three additional claims premised on the same basic facts. First, it argues that the district court improperly rejected its

counterfeiting claim under 15 U.S.C. § 1114(1)(a). Section 1127 of Title 15 defines a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable from" the plaintiff's mark. The district court found, and we agree, that "Chewy Vuiton" and the "CV" monogram design are not "substantially indistinguishable" from the LOUIS VUITTON and LV marks and that the design and the coloring patterns are different. *See Louis Vuitton Malletier*, 464 F. Supp. 2d at 506. In selling "Chewy Vuiton" dog toys, Haute Diggity Dog is not selling knock-off LOUIS VUITTON handbags with a counterfeit LV mark, and no reasonable trier of fact could so conclude.

Second, LVM argues that the district court erred in failing to address LVM's trade dress claims. Although the district court did not explicitly discuss the trade dress issue, we find that this reflects economy rather than error. LVM's trade dress claims under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), and under Virginia common law are based on essentially the same facts as its trademark infringement claims. Haute Diggity Dog does not challenge LVM's claim that its trade dress is protectable. The only question before the court was whether confusion was likely. But the same *Pizzeria Uno* likelihood-of-confusion factors used for trademark infringement claims are applied to trade dress claims, *see Tools USA & Equip. Co. v. Champ Frame Straightening Equip.*, 87 F.3d 654, 661 (4th Cir. 1996), and the two issues rise or fall together. Consequently, our conclusion affirming the district court that no confusion is likely to result with regard to LVM's trademarks is sufficient also to dispose of LVM's trade dress claims as well.

Finally, LVM argues that the district court erred in finding that Haute Diggity Dog's use of the "CV" and the background design was a fair use of LVM's copyrighted Multicolor design. Because LVM attempts to use a copyright claim to pursue what is at its core a trademark and trade dress infringement claim, application of the fair-use factors under the Copyright Act to these facts is awkward. *See* 17 U.S.C. § 107; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). Nonetheless, after examining the record, we agree with the district court that Haute Diggity Dog's use as a parody of certain altered elements of LVM's Multicolor design does not support a claim for copyright infringement.

The judgment of the district court is

*AFFIRMED.*